LOUIS J. EHRET HOLDING CORPORATION, Landlord, *v.* THE ANDERSON GALLERIES, INCORPORATED, Tenant, and 489 PARK AVENUE, INC., Assignee of Tenant, and IRVING TRUST COMPANY, ROSE CUMING and JOHN DOE, etc., Undertenants.

Municipal Court of New York, Borough of Manhattan, Ninth District, December 27, 1930.

*Phillips, Mahoney, Leibell & Fielding,* for the landlord.

*Lippett & Berle,* for the assignee of tenant.

*Carl Ehlermann,* for the undertenant.

*Hornblower, Miller & Garrison,* for the tenant.

GENUNG, J. This is a summary proceeding to remove the tenant, assignee of the tenant, and the undertenants on the ground that they are holding over without the permission of the landlord, after the expiration of the tenant's term.

The written lease dated December 27, 1917, provides for a fixed term of twenty years and ten months from December 1, 1917, " unless sooner terminated, as hereinafter provided," with the privilege to the tenant of renewal for a further term of twenty-one years upon certain terms and conditions in the lease prescribed.

The landlord claims an earlier expiration of the term of the lease to have been effected by virtue of (1) a clause in the lease which it construes as a conditional limitation, (2) a breach by the tenant in its failure to pay rent and taxes, and (3) the service by the landlord, pursuant to the provisions of said lease, of a notice declaring its election because of such breach to have the lease expire on October 28, 1930.

The breach by the tenant in failing to pay the taxes which fell due on May 1, 1930, and the rent which accrued on September 1, 1930, aggregating $20,417.24, is admitted. The lease expressly provides that in case of default by the tenant in the payment of taxes, the landlord may pay the same and regard it as additional rent. The documentary evidence establishes the default of the

tenant, payment of the taxes by the landlord, followed by a demand for payment by the tenant, which was not complied with, and finally a notice of election by the landlord to terminate the lease on October 28, 1930, thirty days after the service of the notice. The only question presented for adjudication is whether the defeasance clause in the lease creates a conditional limitation which permits the landlord to maintain this holdover proceeding as upon the expiration of the lease, or whether, as claimed by the tenant, it is only a condition subsequent under which the landlord may seek a forfeiture of the lease and re-enter through an action in ejectment.

The clause which requires construction by the court in order to determine this question, reads as follows: " In case of any default being made by the Tenant in the payment of said rent or any of the sums which may be added to the rent or any part thereof at the times or in the manner above provided or if the Tenant shall make default in the performance of any of the covenants, conditions or agreements herein provided or in case said premises shall become vacant or abandoned this lease and the relation of Landlord and Tenant shall, at the option of the Landlord, cease and determine and this lease come to an end thirty days after notice given as hereinafter provided, of election to so terminate the same, and provided such default be not remedied during the running of said notice, the Landlord may resume possession of said premises, either by force or otherwise, and remove all persons therefrom without being liable to any prosecution therefor and may re-enter upon and fully have and enjoy and possess the said premises as and of his former estate therein and the Tenant in such case waives service of any further notice of intention to so re-enter upon said premises, or at the option of the Landlord, he may relet the said premises or any part thereof as the agent of said Tenant and receive the rent therefor, applying the same first to the payment of such expense as the Landlord may be put to in re-entering or resuming possession of said premises as aforesaid and then to the payment of the rent and fulfillment of the Tenant's covenants under these presents and said Tenant shall be liable for any deficiency which may arise during the remainder of said term and shall pay the same in monthly payments as the amounts shall at such time or times be ascertained."

The next succeeding paragraph of the lease reads as follows: " In case of election of the Landlord to terminate this lease as aforesaid, the Landlord may, at his option, recover possession of said premises either by summary proceedings, as in case of Tenant holding over after expiration of his term, or by re-entry by action of ejectment, and the Tenant hereby waives notice of intention so to do."

The landlord contends that within the well-known authorities which have distinguished a condition from a conditional limitation, there is presented here a clear case of an earlier expiration at a definite time fixed in the landlord's thirty-day notice. The tenants claim that the language of the clause makes the termination of the lease dependent upon the landlord's election to be exercised after the expiration of the thirty days' notice, provided the tenant has not in the meantime cured its default by payment, and that such language gives the landlord a further option, at the expiration of the thirty days' notice and after re-entry, to relet the premises as agent for the tenant for the balance of the original term fixed by the lease, and to charge the tenant with any deficiency which may arise during the remainder of such term. It is contended that this second option to keep the tenancy alive after the termination of the lease, for the purpose and to the extent of continuing the tenant's liability for rent and the performance of its other covenants under the lease, deprives the first option of the characteristics of a conditional limitation, and stamps it as a right of forfeiture for a broken condition.

The language of the two clauses quoted above, when read together, may be summarized as follows: Upon a breach by the tenant, the landlord is given the option to terminate the lease upon thirty days' notice, and upon the expiration of such thirty days, without the tenant having cured its default during the running of the notice, the landlord may re-enter, and he then has the further option of either fully enjoying and possessing the said premises " as and of his former estate therein," or of reletting the said premises as the agent of the tenant, applying the rents first to the payment of the expenses of such re-entry, and then to the payment of the rent and the fulfillment of other covenants specified in the lease, and that the tenant shall then be liable for any deficiency which may arise during the remainder of the said term; when the landlord elects to so terminate the lease, he has the further option of pursuing one of two remedies, either summary proceedings by reason of the tenant holding over, or by means of a suit in ejectment.

It is true that the provision in the second clause with respect to the landlord's right of choice as between summary proceedings and ejectment has not the legal effect of granting to the landlord, by way of consent, the right of removing his tenant by summary proceedings as for a holdover. The landlord must establish his right as a matter of jurisdiction upon the remaining covenants of the lease. (*Beach* v. *Nixon.* 9 N. Y. 35, 37; *Riesenfeld* v. *R-W Realty Co.*, 223 App. Div. 140; *Burnee Corp.* v. *Uneeda Pure Orange Drink Co.*, 132 Misc. 435.) However, such language may be taken into

consideration by the courts in reading the intention of the parties from the entire instrument. (*Lenco, Inc.,* v. *Hirschfeld,* 247 N. Y. 44, 49.)

The technical common-law meaning of the term " re-enter " as indicating an ouster by means of an ejectment suit, and excluding dispossession by summary proceedings (*Michaels* v. *Fishel,* 169 N. Y. 381), has been held inapplicable to cases where, as here, the lease speaks of resuming possession " either by force or otherwise," the term " otherwise " being held to cover summary proceedings. (*Rosenfeld* v. *Aaron,* 248 N. Y. 437; *Baylies* v. *Ingram,* 84 App. Div. 360; affd., 181 N. Y. 518; *Anzolone* v. *Paskusz,* 96 App. Div. 188.)

This court finds itself unable to agree with the tenant's contention that the language in the defeasance clause " the relation of landlord and tenant, shall, at the option of the landlord, cease and determine and this lease come to an end thirty days after notice given as hereinafter provided, of election to so terminate the same," means that the option of the landlord is to be exercised after the expiration of the thirty days specified in the notice. The phraseology " at the option of the landlord " must be deemed to refer to the entire clause " cease and determine and this lease come to an end thirty days after notice given as hereinafter provided," so that the landlord's option to bring the lease to an end is exercised at the time of the service of the thirty days' notice.

We now come to a consideration of the most serious question which has been presented on behalf of the tenants on the construction of this lease. A conditional limitation in a lease must have the effect of definitely fixing an earlier date for the expiration of the lease than the original term prescribed by such lease. While the lease may grant to the landlord an option as to whether he will avail himself of the conditional limitation, once he exercises that option the lease must be deemed to come to an end at the earlier date fixed by the happening of a certain event, or the conclusion of the period of time fixed by the landlord's notice, as the lease may prescribe. Is the further option to the landlord in the instant case, that at such earlier termination the landlord may then either repossess himself of his former estate, or relet the premises as the agent of the tenant to the end of the original term, inconsistent with the concept of a conditional limitation as distinguished from a condition, within the definitions of those terms which may be found in the leading authorities on this subject?

In approaching the decision of this question, we may well bear in mind this comment by Judge McADAM in his work on Landlord and Tenant: " Whether a provision in a lease creates a conditional limitation or a condition subsequent, is frequently subtle, and the

construction must depend upon each particular case presented. Conditions tending to defeat a grant are generally strictly construed, and the question must therefore be determined by this strict rule of construction."

In the recent case of *Burnee* v. *Uneeda Pure Orange Drink Co.* (*supra*) the Appellate Term of this department, after stating: "As may be expected, the cases on this subject, down to our own time, abound in subtle distinctions between conditions and limitations," proceeds in its opinion to give a comprehensive summary of the several classes of conditional limitations and of the cases which exemplify the differences between conditions and conditional limitations. The following quotation from that opinion may be held applicable to this case, in the construction of that part of the defeasance clause here which gives the landlord the option to end the lease at the expiration of a thirty days' notice, by the service of such notice after default by the tenant: " The third example of conditional limitation grows out of a breach of condition on the part of the tenant. That type arises from a provision inserted in leases for the benefit of the landlord, whereby, upon a violation by the tenant, the former is entitled to serve a notice electing to terminate the lease after the expiration of a certain specified time, thus creating a limitation of the term measured by the period of time fixed in the notice. * * *

" This is also a true type of conditional limitation, because, as is expressed in *Martin* v. *Crossley* (46 Misc. 254, 256): ' it is the *notice*, and not the *breach of condition*, which operates upon the lease.' (Italics mine.) The breach is only an event antecedent to, and not the direct cause of, the expiration. The landlord is given the privilege in the original instrument to cancel it by notice, which practically substitutes a short period for the original term, and whether the occasion of this notice is the breach of the condition or a cause which does not reflect upon the tenant's conduct is quite immaterial. The lease expires by a mode of limitation which the landlord is granted the sole privilege to exercise."

In the light of this distinction, the cases cited by the tenants wherein the leases were terminable by the mere exercise of the landlord's option to re-enter, and not upon the happening of a definite event, or the expiration of the time prescribed in a notice, must be deemed inapplicable. (*Janes* v. *Paddell*, 67 Misc. 420; *Beach* v. *Nixon*, 9 N. Y. 35; *Matter of St. Stephen's Church* v. *Bastine*, 75 Misc. 470; *Kramer* v. *Amberg*, 15 Daly, 205; affd., 115 N. Y. 655; *Matter of Guaranty Building Co.*, 52 App. Div. 140; *Riesenfeld* v. *R-W Realty Co.*, 223 id. 140.)

The alternative remedies expressly prescribed by this lease in

favor of the landlord, as between summary proceedings and an action in ejectment, do not lend weight to the contention of the tenants as an indication that the defeasance clause should be construed as a condition rather than as a conditional limitation, since there is strong authority that both may be consistently provided for in the same lease, and that the landlord is at liberty then to pursue either remedy. In *Martin* v. *Crossley* (46 Misc. 254) Mr. Justice Scott, writing for the Appellate Term, called attention to two clauses in the lease there under consideration, which gave the landlord two alternative remedies, and held as follows: " The sixteenth clause provides as has been said that in case of a breach of condition the landlord may give a five days' notice of intention to determine the lease. The effect of this notice is declared to be that ' the lease and the term and interest and all right and claim under the lease shall cease and end.' Here it is the notice and not the breach of condition which operates upon the lease. The facts of the case are similar to those considered in *Man. Life Ins. Co.* v. *Gosford* [3 Misc. 509] and *Cottle* v. *Sullivan* [8 id. 184]. By contrast the seventeenth clause provides that in case of breach of any covenant the landlord may re-enter the premises. It is such a clause as this which limits the landlord to his right to bring ejectment. One conclusion is that the term granted by the lease was by the terms of the instrument made liable to curtailment upon a certain contingency, to wit: the giving of notice by the landlord, and that when that notice has been given, and the term thereby curtailed, it had ' expired ' so as to justify a proceeding for dispossession for holding over. The sixteenth and seventeenth clauses are not inconsistent, but give the landlord alternative remedies, either of which he is at liberty to pursue."

After re-entry, pursuant to either a final order in summary proceedings or a judgment in an ejectment suit, this landlord has provided in the lease that he may, if he so elects, relet the premises as the agent of the tenant, and hold the tenant liable for the performance of its covenants to the end of the original term. If this provision were entirely inconsistent with an earlier expiration of the term flowing from the tenant's breach, there would be much force to the tenant's contention. But the authorities very clearly hold otherwise.

In the case of *Hall* v. *Gould* (13 N. Y. 127) the landlord had retaken possession of the premises by means of an ejectment suit in consequence of a breach of the lease by the tenant, and thereafter brought an action to recover rent accruing under the lease subsequent to the dispossession, by virtue of the terms of the lease which reserved to the landlord the right to re-enter, and then relet

the premises for the benefit of the tenant. It was argued on behalf of the tenant that this provision was repugnant to the grant, and, therefore, void, and that the eviction of the tenant superseded his obligation to pay rent subsequently accruing under the lease. The court held that the re-entry of the landlord terminated the lease, and that rent as such could, therefore, no longer accrue to the lessor, but affirmed the judgment in favor of the landlord on the ground that his right of action was in substance for damages for the breach of the covenant.

In *Lenco, Inc.*, v. *Hirschfeld* (247 N. Y. 44), where the tenant was dispossessed by summary proceedings for non-payment of rent, and the lease had still more than twenty years to run, it was held that the tenant's action to recover a deposit given to secure the performance of the covenants of the lease was premature, despite the termination of the relationship of landlord and tenant, as a result of the summary proceedings. In that case the court said: " We are to remember that after re-entry for breach of a condition the landlord in reletting is not an agent in a true sense, since the term is at an end. (*Kottler* v. *New York Bargain House, Inc.*, 242 N. Y. 28, 33.) He is merely using a prescribed method to ascertain the damage. (*Kottler* v. *New York Bargain House, Inc.*, *supra*, at p. 33; *Hall* v. *Gould*, 13 N. Y. 127; *Moore* v. *Potter*, 155 N. Y. 481, 488.) "

In *Kottler* v. *New York Bargain House, Inc.* (242 N. Y. 28), where there was a reletting by the landlord as agent for the tenant after the premises had become vacant, the court distinguished between a reletting by a landlord after the expiration of a term, and a reletting during the existence of the term, and called attention to the fact that the lease there under consideration did not provide that the tenant would be chargeable with a deficiency " after the lease shall be terminated by re-entry for condition broken," and adds: " The lease might, of course, have made provision for a reletting even then. We take its covenants as we find them."

In *Hermitage Co.* v. *Levine* (248 N. Y. 333) the defendant was dispossessed in summary proceedings after a few months occupancy under a lease which was to run for a term of twenty-one years. The lease provided that in case the tenant should be dispossessed or ejected, the landlord might re-enter the premises " by force or process of law or otherwise, and relet the same as agent for the tenant, and the tenant shall remain liable for all damages which the landlord may sustain by any such breach of this agreement, or through such entry or reletting." The Court of Appeals held that any action for such damages by the landlord prior to the expiration of the full original term of the lease was premature, in the

absence of a provision such as existed in the case of *McCready* v. *Lindenborn* (172 N. Y. 400) where the tenant was obligated to pay the difference in rent in monthly payments " as the amount of such difference shall from time to time be ascertained." The court in that case said in the course of its opinion: "After the tenant had been ejected in summary proceedings, the lease was at an end. What survived was a liability, not for rent, but for damages. (*Kottler* v. *N. Y. Bargain House Co.*, 242 N. Y. 28.)  *  *  *

" The provision that the landlord may relet as the agent of the tenant after the termination of the lease does not mean that he is an agent in a strict sense. Plainly, he is not, for after the termination of the lease, what he relets is his own. The privilege to relet as agent for the former tenant means this and nothing more, that the reletting shall be evidence of the damages sustained."

In *Rosenfeld* v. *Aaron* (248 N. Y. 437) the court again had under consideration an action by a lessee to recover a deposit given as security on a lease. There had been a removal of the tenants after the issuance and service of a precept in dispossess proceedings which the court held " canceled and annulled the lease, except as the landlord had by a proper survivorship clause reserved the option to keep it alive for the purpose of reletting and hold the tenants for the deficiency." The court, after distinguishing the language of the lease there under consideration from that which was involved in *Michaels* v. *Fishel* (169 N. Y. 381), holds that the phraseology " may re-enter the same either by force or otherwise " should be given its natural meaning rather than its technical common-law meaning, and proceeds as follows: "After re-entry, the landlord might either ' terminate this lease or term ' or ' relet said premises *at any time* as the agent of the tenant or otherwise.' The unexpired term of the lease was some seven years when the landlord took possession. We might require an election either to terminate or relet within a reasonable time (*Lenco, Inc.*, v. *Hirschfeld, supra*, p. 50), if it were not for the fact that the landlord reserved the right to relet the premises ' at any time ' during the term of the lease. We must give due force to every word of the covenant, if possible. (*Matter of Buechner*, 226 N. Y. 440.) By the agreement of the parties, the landlord may keep the lease alive for its entire term for the purpose of reletting."

In *Baylies* v. *Ingram* (84 App. Div. 360; affd., 181 N. Y. 518) the lease provided that in case of default the lessor had the right to re-enter by process of law or otherwise, and to relet as agent of the lessee and to apply the rent received to the payment of the rent due under the lease, and to hold the lessee liable for any deficiency. The defendant was dispossessed for non-payment of

rent. It was argued that the summary proceedings destroyed the relation of landlord and tenant, and that, therefore, the covenant to relet at the risk of the tenant fell with such result, citing *Michaels* v. *Fishel* (169 N. Y. 381). The court distinguishes the *Michaels* case by saying that in the lease before it, there was a provision for a re-entry by any of the forms known to the law, and this included the right of re-entry by summary proceedings, which was not authorized in the *Michaels* case, and then proceeded as follows: "As the parties contracted for a re-entry in this manner, it necessarily follows that the covenant survives such re-entry, the same as the covenant would have survived the re-entry in the *Michaels* case had it been by process of ejectment or had possession been acquired by the landlord in any other form authorized by the covenant."

It follows from this analysis of the cases that a provision for a reletting by the landlord, as the agent of the tenant after breach of covenant by the tenant leading to an earlier expiration of the term, is consistent with such termination, whether accomplished by ejectment or by summary proceedings, and whether the clause be regarded as a condition or a conditional limitation.

It appears from the evidence in this case that a tender in the full amount of all arrears of rent and taxes and of the current rent was made to the landlord on October 29, 1930, one day after the expiration of the thirty days' notice, during which by the terms of the lease the tenant was permitted to cure its default and stop the termination of the lease, and that such tender was refused on the ground that it was too late. The tender was renewed in court on the return day of the precept. It is argued on behalf of the tenant that the construction of the lease as claimed by the landlord may lend itself to a possible harsh result, while the construction urged by the tenant would offer an opportunity to the latter to avert the consequences of its default, and avoid a forfeiture. This court, however, is constrained, under the authorities which have been discussed in this opinion, to hold that the parties to the lease have provided for a conditional limitation, and that the landlord has exercised its rights conferred by the terms of the agreement of lease.

The landlord, therefore, is entitled to a final order in this proceeding. Five days' stay.