In the Matter of Ethel C. Gearing et al., Respondents, *v.* Joseph A. Kelly et al., Appellants.

First Department, December 19, 1961.

*Edward Ross Aranow* of counsel (*Herbert J. Brown, Robert J. Ward* and *Michael P. Rosenthal* with him on the brief; *Aranow, Brodsky, Bohlinger, Einhorn & Dann,* attorneys), for appellants.

*William Mertens* for respondents.

Steuer, J. The respondents appeal from an order of Special Term setting aside the election of a director. The corporation involved, Radium Chemical Company, Inc., was formed by Joseph Kelly, Sr., and Thomas Gearing, and they each owned

half of the stock. Until 1952 there were three directors, the two founders and Margaret Lee, an employee of long standing. In 1952, Mr. Gearing died and his daughter, Mrs. Meacham, was elected to the place on the board formerly held by him. In 1955 the number of directors was increased to four and Joseph Kelly, Jr., was elected to the new place. In 1961 Miss Lee resigned as a director. A proper notice of meeting to fill the vacancy was sent to each of the remaining directors. Mrs. Meacham, who had previously learned that her husband, whom she proposed to nominate for the vacancy, would not receive the support of the Kellys, refused to attend the meeting. The Kellys attended the meeting and elected Julian Hemphill as the fourth director. It is that election that the petitioners seek to void. The petitioners are Mrs. Meacham and her mother, Mrs. Gearing, who holds a substantial share of the stock.

Vacancies in a board of directors are to be filled as the by-laws of the corporation provide, subject to statutory limitations (General Corporation Law § 27; 2 Fletcher, Cyclopedia Corporations [1954], p. 276, § 421; 7 White, New York Corporations [12th ed., 1953], p. 186; Ballantine, Corporations [rev. ed., 1946], p. 130, § 45; Henn, Handbook of Law of Corporations, p. 341, § 210).

The first question in this case is whether the by-laws of the corporation, when providing that a quorum shall consist of a majority, mean a majority of the remaining directors or a majority of the total authorized number. The language used, " A majority of the directors shall constitute a quorum ", is in itself susceptible of either meaning. However, reference to other sections gives the interpreter of the section some guide. There are three sections of the by-laws in addition to the one quoted which throw light on the question. One (art. IV, § 2) merely speaks of the board. But where serious action is involved (art. IV, § 1; art. VII, § 1) the provision is for a vote by a majority of the *whole* board and by three fourths of the *whole* board. These instances make it appear that the by-laws make a distinction between the board and the whole board. That distinction would seem to imply, in the instances where the whole board is not called for, an interpretation that the board referred to consists of the directors actually in office.

It would be less than candid to imply that an opposite view, as held by Special Term, is without foundation. Section 27 of the General Corporation Law, which gives the power to make by-laws as to a quorum, and in addition states what a quorum should be in the absence of a by-law, has been said to be interpreted to the contrary. As there are only two cases which

constitute this adverse interpretation, it might be well to examine them.

*Erie R. R. Co.* v. *City of Buffalo* (180 N. Y. 192) was an action to enjoin the construction of a viaduct. One of the grounds of relief was based on a vote taken by the commissioners appointed under the Buffalo Grade Crossing Act. The statute provided that a resolution such as that involved required a two-thirds vote. The number voting for the resolution was less than two thirds of the board as constituted but was two thirds of the number in office. This was due to the fact that two members who had been appointed had died and their places had not been filled. The court held the resolution invalid. It based its construction on the analogous situation of corporate boards of directors. The court did state that in determining a quorum the number is to remain the same even though there are vacancies. It should be noted, however, that the court was dealing with a provision requiring a two-thirds vote, and it appears to be universally held that in situations requiring a vote in excess of a majority the fraction required is to be calculated on the basis of authorized membership. The other authority, *Mitchell* v. *Forest City Print. Co.* (107 Misc. 709, affd. 187 App. Div. 743) is a pure dictum which relies on *Erie R. R.* (*supra*).

On the other hand, the Model Business Corporation Act (vol. 1, p. 602, § 36, 1960) makes the specific provision that a majority of the remaining directors may fill a vacancy though less than a quorum. And where the number of directors is increased, the number required to vote to fill the new vacancies is calculated on the basis of the board before the increases were voted (Fletcher, *op. cit.* p. 278; Stock Corporation Law, § 55).

Our view of the meaning of the by-law is thus not precluded by controlling authority requiring a contrary view and is supported by the internal evidence of the by-laws as a whole and by the way the question has been treated in other jurisdictions.* An examination of the situation presented is also helpful. The objecting director will be in no worse position than she was before the vacancy was created. The departing director did not represent her interests. She was in a minority before and she still is. It would hardly be imagined that in adopting the by-laws it was intended to give her a greater leverage over the affairs of the corporation than she had before the vacancy occurred.

Special Term considered the question of whether the petitioners should be estopped to complain. We believe that they

---

* Twenty-one States have statutes allowing the directors to fill vacancies where less than a quorum remains (Model Business Corporation Act, *op. cit.*, p. 603).

should. Clearly Mrs. Meacham, who as a director had a duty to attend meetings, should not be allowed to gain an advantage by a deliberate breach of that duty. Special Term did not reach that question because the learned Justice concluded that the other petitioner could not be estopped. Mrs. Gearing, not being a director, had no obligation in connection with meetings. However, in this corporation where the stock is so closely held it is apparent that her daughter is her director, and the two are motivated by the identical interests. It further appears that the sole controversy here arises from the fact that the Kellys have refused, despite continued demand, to give Mrs. Meacham's husband a salary equal to that drawn by the younger Kelly. If they can frustrate corporate action unless their demands are complied with, what is to prevent their continuing to refuse to attend until their every wish meets compliance?

The order should be reversed, on the law and on the facts, with costs to appellants, and the petition dismissed.

EAGER, J. (dissenting). I would affirm on the opinion of Mr. Justice HECHT at Special Term. The provision of the by-laws that a "majority of the directors shall constitute a quorum", is, of course, to be construed with due regard to the context, as a whole, of the section in which it is used. Immediately following, as it does, the opening sentence of the section providing for a board of directors of four, such provision for a majority to constitute a quorum clearly bespeaks a majority of a board of four. Furthermore, the Appellate Division in the Fourth Department has recently held that "It is well established that a majority means a majority of the whole number of directors and a quorum remains the same even though there may be vacancies" (*Cirrincione* v. *Polizzi*, 14 A D 2d 281, 283).

Here, on sound principles, the doctrine of estoppel, "which is essentially equitable in its nature, and is founded on good conscience and fair dealing" (*Angerosa* v. *White Co.*, 248 App. Div. 425, 433, affd. 275 N. Y. 524) should not be applied against the petitioners. It is obvious that the assembling of a quorum of the directors for the purpose of the filling of the vacancy in the board would tend to perpetuate in the Kelly family the control of this corporation. The vacancy would be filled by a Kelly nominee. Thereupon, the Kelly family with their 50% stock holdings could deadlock the vote at future stockholders' meetings and effectively block an election of new or other directors by stockholders. Thus, their controlled board would continue in office. All this would tend to relegate the petitioners to the status of mere minority stockholders and defeat their rights as holders of 50% of the stock. This would give the Kelly family an undue

and unconscionable advantage and thus, clearly, estoppel as a doctrine applicable for the promotion of justice, should not be applied here. (*Angerosa* v. *White Co., supra*; *Lawrence* v. *American Nat. Bank,* 54 N. Y. 432, 436; *Troy Union R. R. Co.* v. *City of Troy,* 132 Misc. 534, 546, affd. 227 App. Div. 351, affd. 253 N. Y. 597.) In any event, as pointed out by Mr. Justice HECHT, the copetitioner Gearing, a substantial stockholder, is not estopped from insisting upon compliance with the quorum requirements of the by-laws.

If, in fact, there is here an irresolvable deadlock in control of this corporation, there are remedies available, and, as stated by Mr. Justice HECHT (p. 676), the mere existence of a deadlock "is insufficient basis for disregarding the by-law provisions."

RABIN, J. P., McNALLY and STEVENS, JJ., concur with STEUER, J.; EAGER, J., dissents and votes to affirm in opinion.

Order entered on May 10, 1961 so far as appealed from reversed, on the law and on the facts, with $20 costs and disbursements to the appellants, and the petition dismissed.